## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF VIRGINIA
#### Richmond Division

NAPOLEON Y. JR.,[1]       )
       )
    *Plaintiff*,       )
       )
      v.       )     Civil No. 3:22-cv-00718-RCY-SLS
       )
MARTIN O'MALLEY,       )
Commissioner of the       )
Social Security Administration,[2]       )
       )
    *Defendant*.       )
       )

## REPORT AND RECOMMENDATION

In this action, Plaintiff Napoleon Y. Jr. seeks review of the Commissioner of the Social Security Administration's ("SSA") decision to deny his Title II application for disability insurance benefits. This matter comes before the Court for a Report and Recommendation under 28 U.S.C. § 636(b)(1)(B) on cross-motions for summary judgment. (ECF Nos. 16, 18.) The motions have been fully briefed (ECF Nos. 16-19), rendering this matter ripe for review.

Plaintiff requests that the Commissioner's decision be vacated and remanded for a *de novo* hearing and new decision. (Plaintiff's Brief in Support of Motion for Summary Judgment (ECF No. 17) ("Pl.'s Mem.") at 14.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge ("ALJ"): (1) violated 20 C.F.R. § 404.1529 and Social Security Ruling ("SSR") 16-3p

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he has been substituted for Acting Commissioner Kilolo Kijakazi as Defendant in this action. No further action need be taken to continue this suit. 42 U.S.C. § 405(g).

by failing to provide sufficient reasons for rejecting Plaintiff's allegations regarding his ability to stand; and (2) erred in conducting the analysis required by the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(c), to determine whether Plaintiff has skills that are readily transferable to a significant range of semi-skilled or skilled work within his functional capacity. (Pl.'s Mem. at 1.)  In response, the Commissioner argues that because substantial evidence supports the ALJ's decisions on these matters, the decision should be affirmed. (Defendant's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 18) ("Def.'s Mem.") at 9-15.)

For the reasons set forth below, this Court finds that: (1) the ALJ complied with applicable regulations when assessing Plaintiff's allegations regarding his ability to stand, and substantial evidence supports the ALJ's residual functional capacity ("RFC") determination; and (2) substantial evidence supports the ALJ's transferability analysis and her conclusion that Plaintiff could perform a significant range of semi-skilled, light work with little, if any, vocational adjustment, and the ALJ complied with all pertinent regulations and agency rulings in making those findings.  Therefore, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED, and the final decision of the Commissioner be AFFIRMED.

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for disability insurance benefits on November 19, 2018, alleging disability beginning August 29, 2018.  (Administrative Record ("R.") at 19, 79, 81.)[3]

---

[3] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers such as Plaintiff's social security number, the names of any minor children, dates of birth (except for the year of birth), and financial account numbers from this Report and Recommendation. The Court

Given a prior unfavorable decision dated August 31, 2018, Plaintiff amended the alleged onset date to September 1, 2018.  (R. at 27, 39.)  In his application, Plaintiff alleged that he suffered from vascular disease, chronic obstructive pulmonary disease ("COPD"), a blockage in his neck, diabetes, and hearing loss.  (R. at 80-81.)  The SSA denied Plaintiff's claims initially and again upon reconsideration.  (R. at 19, 79, 93.)  Plaintiff requested a hearing before an ALJ, and one was held on September 27, 2021.  (R. at 35-68, 112-14.)

On October 13, 2021, the ALJ issued a written decision, holding that Plaintiff was not disabled under the Social Security Act ("the Act") from September 1, 2018 (the amended alleged onset date) to December 31, 2019 (the date last insured).  (R. at 19-28.)  On September 13, 2022, the SSA Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (R. at 1-4.)  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An individual has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."  *Id.* § 423(d)(2)(A).

---

will further restrict its discussion of Plaintiff's medical information to the extent necessary to result in a proper analysis of the case.

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. § 404.1520(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ must review the claimant's current work activity to determine if he has been participating in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ must ask whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* § 404.1520(a)(4)(ii). At step three, the ALJ must determine whether the medical impairment(s) meet or equal an impairment listed in the regulations. *Id.* § 404.1520(a)(4)(iii). Between steps three and four, the ALJ must determine the claimant's RFC, which accounts for the most that the claimant can do despite his impairments. *Id.* § 404.1545(a).

At step four, the ALJ must assess whether the claimant can perform his past employment given his RFC. *Id.* § 404.1520(a)(4)(iv). The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his limitations preclude him from performing his past relevant work. *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472. If such past work can be performed, then benefits will not be awarded, and the analysis ends. *See* 20 C.F.R. § 404.1520(e). However, if the claimant cannot perform his past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy. *See id.* § 404.1520(a)(4)(v). The Commissioner usually offers this evidence through the testimony of a vocational expert ("VE"). *See Mascio*, 780 F.3d at 635.

In reviewing the Commissioner's decision to deny benefits, a court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'" *Mascio*, 780 F.3d at 634 (quoting *Bird v.*

*Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v. Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]."  *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the reviewing court must affirm, regardless of whether the court agrees with such findings.  *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the reviewing court must reverse the decision.  *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim in accordance with the five-step evaluation process.  (R. at 19-28.)  *See* 20 C.F.R. § 404.1520(a)(4); *Mascio*, 780 F.3d at 634.  The ALJ found

that Plaintiff last met the insured status requirements of the SSA on December 31, 2019.  (R. at 22.)  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since September 1, 2018 (the alleged onset date as amended) through December 31, 2019 (the date last insured).  (R. at 22.)  At step two, the ALJ determined Plaintiff suffered from the following severe impairments through December 31, 2019: valvular regurgitation heart disease or other stenotic defects, acute myocardial infarction, and peripheral arterial disease.  (R. at 22-23.)  At step three, the ALJ determined that through the date of last insured, Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 23.)

The ALJ then determined Plaintiff's RFC.  (R. at 23-26.)  Based on the evidence in the record, the ALJ found that through the date of last insured, Plaintiff retained the ability to perform a range of light work as defined in 20 C.F.R. § 404.1567(b), except Plaintiff can occasionally climb and can tolerate only occasional exposure to extreme heat and humidity.  (R. at 23.)  The ALJ explained that she determined Plaintiff's RFC after considering "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p."  (R. at 24.)

In conducting her analysis, the ALJ considered Plaintiff's statements regarding his symptoms and functional limitations.  (R. at 24.)  Specifically, Plaintiff "testified that he is not able to work due to limited ability to stand and walk because of weakness, shortness of breath and numbness in his legs."  (R. at 24.)  Plaintiff also stated that he occasionally uses a cane when he feels weak and that he "does little around the house due to his limitations" aside from watching television and preparing light meals.  (R. at 24.)  The ALJ acknowledged Plaintiff's statements

from an October 7, 2019 Function Report.  (R. at 24, 193-200.)  Therein, Plaintiff stated he prepared simple meals, went outside and watched television daily, drove short distances, shopped by phone and by mail, and managed his finances.  (R. at 24, 195-96.)  Plaintiff also reported difficulty sleeping due to numbness in his legs and arms, which required him to reposition.  (R. at 24, 194.)  He described an inability to walk or stand long or lift more than 10 pounds due to shortness of breath.  (R. at 24, 196-98.)  "After careful consideration of the evidence," the ALJ found that while Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (R. at 24.)

The ALJ then reviewed Plaintiff's "long history of cardiovascular disease," including a 2010 heart attack; November 2018 CT scan revealing stenosis of the left carotid artery; March 2019 left carotid artery endarterectomy; February 2020 negative EKG testing; July 2020 perfusion testing showing low normal ejection fraction with normal wall motion at rest and post stress; and August 2020 surgical repair of an abdominal aortic aneurysm followed by a cardiovascular accident a few days later, which was stabilized and improved with treatment.  (R. at 24 (internal record citations omitted).)  "Examinations thereafter were generally unremarkable," including normal lung, cardiovascular, and strength examinations.  (R. at 25.)  The ALJ determined that Plaintiff's cardiac and peripheral arterial disease limited him to light exertion and additionally impacted his ability to climb or be around extreme heat and humidity.  (R. at 25.)  The ALJ further noted that these RFC limitations "account for his occasional shortness of breath and lower extremity numbness, but also consider the relatively unremarkable examination findings subsequent to surgeries."  (R. at 25.)

The ALJ explained her assessment of Plaintiff's statements as follows:

[Plaintiff] has stated that his symptoms have prevented him from working since the date he alleges he became disabled because he cannot stand, or walk for long, has numbness in his lower extremities and is short of breath. The objective evidence, however, does not fully support disabling symptoms. Physical examinations of [Plaintiff] did occasionally note that [he] complained of shortness of breath and numbness in his lower extremities and testing did reveal peripheral arterial disease in the lower extremities. Otherwise, evaluations were unremarkable, with providers failing to describe abnormalities in his gait, or to note that he appeared tired or uncomfortable during appointments. In addition, [Plaintiff] had successful surgeries for his conditions, and otherwise, his care was conservative, consisting mainly of medications. Finally, [Plaintiff] was able to care for his personal needs, prepare meals, drive, manage his financial affairs, watch television and shop. Although [Plaintiff]'s impairments did cause some occasional shortness of breath and numbness in the legs, the objective findings contained in the record, examination findings, his statements to providers for treatment purposes, and his admitted ability to perform a variety of daily tasks all suggest that these symptoms were not as severe or as limiting as he claims.

(R. at 25 (internal record citations omitted).)

The ALJ also "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." (R. at 24.) A prior administrative decision found a medium RFC with postural and environmental limitations. (R. at 23.) The ALJ assigned this prior decision limited weight given the passage of time and submission of additional evidence. (R. at 23.)

The ALJ considered evaluations from state agency physicians on initial review and reconsideration review. (R. at 25-26.) On initial review, the state agency physicians found Plaintiff could perform light exertion. (R. at 25.) On reconsideration review, state agency physicians opined that Plaintiff was "limited to medium exertional work with six hours of sitting, standing and walking in an eight hour workday, no more than occasional climbing of ladders, ropes and scaffolds, and frequent climbing of ramps and stairs." (R. at 25.) They found that Plaintiff

8

should avoid concentrated exposure to heat and respiratory irritants.  (R. at 25.)  The ALJ noted that the evaluators on initial review and reconsideration review supported their findings with "their narratives, and they are somewhat consistent with the remainder of the medical evidence."  (R. at 25.)  But the ALJ found that "[t]he evidence supports that [Plaintiff] has a cardiac impairment that causes some shortness of breath and reduced stamina, which would be more consistent with light exertion."  (R. at 25.)  The ALJ further concluded: "there is no indication that he cannot climb at least occasionally, and based on his daily activities and mild to moderate objective findings, he should have no difficulty with postural tasks."  (R. at 25.)  The ALJ limited Plaintiff to no more than occasional exposure to extreme heat and humidity because those conditions could exacerbate his symptoms.  (R. at 25.)  In sum, the ALJ concluded that the opinion on initial review was partially persuasive, "as it properly identified exertional limitations, but did not further assess his limitations in climbing and environmental limitations."  (R. at 26.)  The ALJ found that the opinion on reconsideration review, recommending medium exertional work with limitations, was "not generally persuasive as it overestimat[ed Plaintiff's] abilities . . . ."  (R. at 26.)

After completing the RFC assessment, the ALJ then determined Plaintiff's vocational factors.  At step four, she found Plaintiff unable to perform his past relevant work as a tractor-trailer-truck driver and corrections officer.  (R. at 26.)

At step five, the ALJ acknowledged that "[i]n determining whether a successful adjustment to other work can be made, [she] must consider [Plaintiff's RFC], age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2."  (R. at 27.)  She noted that Plaintiff has the equivalent of a high school education and, at age 61 years old on the date late insured, classified as an individual closely approaching retirement age.  (R. at 26.)  Based on testimony from the VE, the ALJ found that Plaintiff acquired

protective services skills and security services skills from his past relevant work and that very little, if any, vocational adjustment would be required to utilize those skills in transferable skill jobs. (R. at 26.)  The VE testified that an individual with Plaintiff's age, education, work experience, and RFC could use skills transferable from Plaintiff's past relevant work to perform the requirements of representative occupations within the light occupational base such as Building Guard (30,000 jobs nationally), Jailer (98,000 jobs nationally), and Patrol Conductor (50,000 jobs nationally). (R. at 27.)  The ALJ adopted the VE's testimony, concluding that, "through the date last insured, considering [Plaintiff's] age, education, work experience, and residual functional capacity, [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy." (R. at 27.)  Therefore, the ALJ found Plaintiff "not disabled." (R. at 27.)

## IV.    ANALYSIS

In reviewing the Commissioner's decision to deny Plaintiff's application, the Court must determine whether: (1) the ALJ applied the correct legal standards; and (2) substantial evidence supports the ALJ's findings. *Mascio*, 780 F.3d at 634 (citing *Bird*, 699 F.3d at 340). "In reviewing for substantial evidence, [a court must not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). Consequently, as long as the judgment is explained and supported by substantial evidence, this Court must accept the Commissioner's decision, even if this Court would reach an opposite conclusion or weigh the evidence differently if it were conducting a *de novo* review of the record. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *Rhyne v. Astrue*, No. 3:09-cv-412, 2011 WL 1239800, at *3 (W.D.N.C. Mar. 30, 2011).

For the reasons that follow, the Court finds that: (1) the ALJ followed the correct legal standards in considering Plaintiff's statements regarding his symptoms and resulting limitations, and substantial evidence supports the RFC determination; and (2) the ALJ complied with applicable legal standards in conducting the transferability analysis, and substantial evidence supports the ALJ's conclusion that Plaintiff had acquired work skills that were transferable, with little if any, vocational adjustment, to other semi-skilled, light work existing in significant numbers in the national economy.

### A. The ALJ Applied Correct Legal Standards in Evaluating Plaintiff's Subjective Statements About His Ability to Stand, and Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff first contends that the ALJ violated 20 C.F.R. § 404.1529 and SSR 16-3p by failing to provide sufficient reasons for rejecting Plaintiff's statements that he could only stand in one place for about ten minutes and needed to change positions frequently due to numbness in his legs. (Pl.'s Mem. at 5.)  The ALJ's decision, however, shows that she considered Plaintiff's statements in compliance with applicable legal requirements.

The regulations establish a two-step process for evaluating an individual's symptoms, including pain, in the disability determination.  20 C.F.R.  § 404.1529; *see also* SSR 16-3p, 2017 WL 5180304, at *3.  "First, the ALJ must determine whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms."  *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020); *see also* 20 C.F.R. § 404.1529(b); SSR 16-3p, at *3.  Second, "the ALJ must assess the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and whether the claimant is disabled."  *Arakas*, 983 F.3d at 95.  The claimant need not produce objective evidence at the second step.  *Id.*  Instead, "the ALJ must consider the entire

case record and may 'not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate' them." *Id.* (quoting SSR 16-3p); *see also* 20 C.F.R. § 404.1529(c)(1).

Here, the ALJ followed this two-step process.  The decision acknowledges Plaintiff's statements about his symptoms and resulting limitations, including his reported inability to stand or walk for long due to numbness in his lower extremities and shortness of breath.  (R. at 24-25.) It also summarized the record evidence, including the objective medical evidence, Plaintiff's treatment history, examination reports, and Plaintiff's daily activities.  (R. at 24-26.)  At the first step, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ."  (R. at 24.)  But at the second step, and "[a]fter careful consideration of the evidence," the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms [we]re not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (R. at 24.)  The ALJ then outlined those reasons to include the objective findings, normal examination findings, successful surgeries for conditions and otherwise conservative treatment consisting mainly of medications, Plaintiff's statements to his treating provider, and Plaintiff's daily activities.  (R. at 25.)  Following the ALJ's evaluation of Plaintiff's symptoms and analysis of the medical opinion evidence, the ALJ determined that Plaintiff's cardiac and peripheral arterial disease limited him to light exertion, limited his ability around extreme heat and humidity, and impacted his ability to climb.  (R. at 24-26.)

Plaintiff characterizes the ALJ's explanation for rejecting his statements about his ability to stand as "conclusory and uninformative."  (Pl.'s Mem. at 7.)  Specifically, he contends that the ALJ failed to identify the "daily tasks," "specific statements to providers," "any genuine

inconsistencies between Plaintiff's testimony and the medical records," or "any specific evidence" that "belies Plaintiff's testimony or undermines his subjective description of having been unable to stand in one place for longer than ten minutes or that he needed to change positions frequently because of numbness in his legs." (Pl.'s Mem. at 7.)

To the contrary, the ALJ did identify specific tasks, including Plaintiff's ability to care for his personal needs, prepare light meals, go outside daily, and drive short distances, as inconsistent with Plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms. (R. at 24, 25.) The ALJ's decision outlined the medical records, which included a CT scan revealing stenosis of the left carotid artery followed by a successful left carotid artery endarterectomy during the relevant period and a surgery followed by medical treatment and normal or unremarkable examinations after the date last insured. (R. at 24.) The ALJ acknowledged that Plaintiff occasionally complained of shortness of breath and numbness in lower extremities to treating providers but also highlighted that providers otherwise failed to document abnormalities in Plaintiff's gait or complaints or observations about Plaintiff's appearing tired or uncomfortable. (R. at 25.) After conducting her analysis, the ALJ specifically found that the RFC determination "account[ed] for [Plaintiff's] occasional shortness of breath and lower extremity numbness," which Plaintiff stated impacted his ability to stand. (R. at 25.) The explanation provided in the decision sufficiently "build[s] an accurate and logical bridge" from the evidence to the ALJ's conclusion. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

The Court finds the cases cited by Plaintiff in support of his argument distinguishable. (*See* Pl.'s Mem. at 7.) In *Esteban v. Commissioner of Social Security*, the claimant repeatedly argued an inability to sit upright without experiencing intense pain and reported sitting in a reclining position to manage his pain. No. 2:21-cv-617, 2023 WL 2760059, at *7 (E.D. Va. Apr. 3, 2023).

While the *Esteban* ALJ analyzed Plaintiff's ability to walk and stand, the decision failed to "separately evaluate [the claimant's] alleged sitting problems," including potential limitations due to the inability to sit in an upright position. *Id.* In *Shue v. Commissioner of Social Security*, the claimant's statements identified a service dog as medically necessary to alert her to migraines and retrieve medicine. No. 1:22-cv-961, 2023 WL 3727935, at *5 (E.D. Va. May 30, 2023). The Court found error in the ALJ's failure to analyze whether the claimant's service dog was indeed medically necessary. *Id.* at *4-5. Unlike in those decisions, the ALJ here specifically considered Plaintiff's statements regarding his shortness of breath and leg numbness and their impact on his ability to stand in arriving at the RFC determination. (R. at 24-26.) The ALJ's analysis allows for meaningful review.

Thus, the Court does not find that the ALJ committed any legal error. The ALJ applied the correct legal standards and reasonably concluded, based on the evidence, that Plaintiff's statements about the intensity and persistence of his symptoms were not entirely consistent with the other evidence on file. Substantial evidence supports the ALJ's decision, and the Court declines to reweigh the evidence. *See Hancock*, 667 F.3d at 472, 476.

### B. The ALJ Applied Correct Legal Standards in Step Five, and Substantial Evidence Supports the ALJ's Transferability Determination

Plaintiff next argues that the Commissioner failed to satisfy his burden at step five in demonstrating that Plaintiff's acquired work skills were readily transferable to a significant range of semi-skilled light work. (Pl.'s Mem. at 9-14.) His argument is two-fold. First, Plaintiff contends that substantial evidence does not support the ALJ's finding that Plaintiff possessed actual, transferable skills. (Pl.'s Mem. at 12-14.) Second, Plaintiff contends that substantial evidence does not support a finding that any such skills are readily transferable to a "significant range of semi-skilled work." (Pl.'s Mem. at 12.) Given these asserted errors, Plaintiff argues that

Section 202.00(c) of the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, mandates a finding of disability in his case. For the reasons that follow, the ALJ applied correct legal standards in finding Plaintiff not disabled, and substantial evidence supports the ALJ's findings at step five.

### 1.   Applicable Regulations and Rulings Regarding the Transferability Analysis

If the ALJ determines the claimant cannot return to his past employment, as the ALJ did here, the analysis proceeds to the fifth step. Under that final step, the Commissioner bears the burden of demonstrating that the claimant can perform other jobs existing in significant numbers in the national economy consistent with the RFC and other vocational factors, including the claimant's age, education, and work experience. 20 C.F.R. §§ 404.1512(b)(3), 404.1520(a)(4)(v), 404.1560(c). In determining whether a claimant can perform other work, the ALJ considers whether the claimant acquired transferable work skills from past relevant skilled or semi-skilled work. *See* 20 C.F.R. §§ 404.1565, 404.1568(d).

A claimant has "skills that can be used in other jobs, when the skilled or semi-skilled work activities [the claimant] did in past work can be used to meet the requirements of skilled or semi-skilled work activities of other jobs or kinds of work." 20 C.F.R. § 404.1568(d)(1); *see also* SSR 82-41, 1982 WL 31389, at *2 ("Transferability means applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs."). Transferable skills include those that: (1) require the same or similar skills; (2) involve the same or similar tools and machines; or (3) use the same or similar raw materials, products, processes, or services. 20 C.F.R. § 404.1568(d)(2). "A complete similarity of all three factors is not necessary for transferability." *Id.* § 404.1568(d)(3). SSR 82-41 defines a skill as "knowledge of a work activity which requires the exercise of significant judgment that goes

beyond the carrying out of simple job duties…."  SSR 82-41, at *2.  Skills are the "practical and familiar knowledge of the principles and processes of an art, science or trade, combined with the ability to apply them in practice in a proper and approved manner.  This includes activities like making precise measurements, reading blueprints, and setting up and operating complex machinery."  *Id*.

"Skills, levels of skills and potential occupations to which skills from [past relevant work] may be transferred are for the . . . ALJ to determine (with the assistance, when required, of a [VE] or occupational reference sources)."  SSR 82-41, at *4.  *See also Hall v. Harris*, 658 F.2d 260, 267 (4th Cir. 1981) (stating that the ALJ "may, and ordinarily should, require the testimony of a vocational expert" in making the transferability determination).  If an ALJ finds transferable skills, "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision."  SSR 82-41.

SSA regulations consider "advancing age to be an increasingly limiting factor" in a claimant's ability to adjust to other work.   20 C.F.R. § 404.1563(e).  Therefore, for an individual of advancing age, defined as someone age 55 or older, *id.* § 404.1563(e), a finding of transferable skills to other work can be made "only if the light work is so similar to [their] previous work that [they] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry."  *Id.* § 404.1568(d)(4) (citing 20 C.F.R. Pt. 404, Subp. P, App. 2, § 202.00(f)).  Individuals of advanced age who have "skills that are not readily transferable to a significant range of semi-skilled or skilled work that [are] within the individual's functional capacity… [are considered] disabled."  20 C.F.R. Pt. 404, Subp. P, App. 2, § 202.00(c).  The parties agree that Plaintiff, age 61 on the date last insured, qualifies as an individual of advanced age. (Pl.'s Mem. at 10, Def.'s Mem. at 12.)

In the transferability analysis, "an ALJ must (1) identify the acquired work skills; (2) identify specific occupations to which the acquired skills can be transferred; and (3) include evidence that jobs are sufficiently prevalent in the economy." *Rosalyn G. v. Kijakazi*, No. 2:21-cv-275, 2022 WL 1311473, at *8 (E.D. Va. Apr. 15, 2022) (citing SSR 82-41, at *7).

### 2. The ALJ Applied Correct Legal Standards in Assessing Plaintiff's Transferable Skills, and Substantial Evidence Supports the ALJ's Findings

Plaintiff argues that the VE's testimony failed to reflect actual skills Plaintiff obtained in his work as a corrections officer. (Pl.'s Mem. at 12.) The Commissioner counters that "the VE specifically testified that he had acquired skills in 'security services and protecting services,' *i.e.*, providing security and protection" and that those skills transferred to the semi-skilled occupations of building guard, jailer, and patrol conductor. (Def.'s Mem. at 14-15.) The Court agrees with the Commissioner on this point—the ALJ identified the specific skills Plaintiff acquired from prior relevant semi-skilled work and found them readily transferable to other occupations within the light exertional level. In doing so, the ALJ applied correct legal standards, and substantial evidence supports the ALJ's findings.

The ALJ questioned Plaintiff about his prior relevant work experience at the hearing. (R. at 42-49.) Plaintiff testified that he previously worked as a public safety officer providing security at a mental health institution for over 300 civilly committed sex offenders. (R. at 46.) Plaintiff described his job duties as "akin to the duties of a corrections officer." (R. at 47.) He also testified that his duties included responding to or intervening in physical altercations between inmates or attempted escapes. (R. at 45-47.)

After the VE had listened to Plaintiff's testimony about his work history (R. at 59), the ALJ asked the VE: "Did [Plaintiff] acquire any skills from his past work, and if so, what skills from which job?" (R. at 63.) The VE answered in the affirmative, and identified skills "in security

services, protecting services" obtained from Plaintiff's job as a corrections officer.  (R. at 63.)  The ALJ then asked whether those skills would "transfer with little if any vocational adjustment in terms of tools, work processes, work settings, or the industry."  (R. at 64.)  The VE answered, "Yes, they would."  (R. at 64.)  The VE identified the following semi-skilled occupations within the light exertional level to which those skills would transfer with little, if any, vocational adjustment: building guard (about 30,000 jobs nationally), jailer (about 98,000 jobs nationally), and patrol conductor (about 50,000 jobs nationally).  (R. at 64-65.)

The ALJ adopted the VE's testimony in her decision, finding that Plaintiff "acquired skills from his past relevant work.  The skills acquired were protective services skills and security services skills."  (R. at 26.)  The ALJ also found these skills transferable with "very little, if any, vocational adjustment required."  (R. at 26.)  Finally, the ALJ concluded based on the VE's testimony "that, through the date last insured, considering [Plaintiff's] age, education, work experience, and [RFC], [Plaintiff] was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," including the three occupations identified by the VE.  (R. at 27.)  Thus, the ALJ complied with the regulations and case law in (1) identifying the acquired work skills (protective services and security services skills); (2) identifying the specific occupations to which those skills would transfer with little to no adjustment (building guard, jailer, and patrol conductor); and (3) including evidence that those jobs were sufficiently prevalent in the economy.  *See* SSR 82-41, at *7 (stating that "the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision").  *See also Rosalyn G.*, 2022 WL 1311473, at *8 (citing SSR 82-41).

As part of his challenge of the ALJ's decision, Plaintiff contends that his prior work "did not provide him with actual skills for direct entry into the light jobs" identified by the VE.  (Pl.'s Mem. at 13.)  Specifically, he asserts that the VE failed to distinguish between carrying out simple job duties and skills that require knowledge of art, science, or trades "at a level similar to making precise measurements, reading blueprints, or operating complex machinery, as contemplated by the agency's ruling."  (Pl.'s Mem. at 13-14.)  The Court disagrees.  SSR 82-41 defines a skill to include "knowledge of a work activity which requires the exercise of significant judgment that goes beyond the carrying out of simple job duties…."  SSR 82-41, at *2.  Plaintiff testified about his job duties in his prior role, which included intervening in physical altercations between inmates, responding to attempted escapes, and performing other job duties akin to that of a corrections officer.  These job duties require the exercise of significant judgment and go beyond carrying out simple job duties.  The ALJ did not err in adopting the VE's testimony regarding these transferable protective services and security services skills.

   3. *The ALJ Applied Correct Legal Standards in Assessing Plaintiff's Ability to Perform a Substantial Range of Work, and Substantial Evidence Supports the ALJ's Findings*

Plaintiff next argues that "[t]he VE did not testify that Plaintiff has skills that are readily transferable to a *significant range of work*, as the regulations require."  (Pl.'s Mem. at 10 (emphasis in original).)  Plaintiff argues that Section 202.00(c) of 20 C.F.R. Part 404, Subpart P, Appendix 2, therefore, mandates a finding of disability.  (Pl.'s Mem. at 10.)  In response, the Commissioner contends he met his burden in showing that Plaintiff had skills that would be readily transferable to semi-skilled, light work existing in significant numbers in the national economy and that substantial evidence supports the ALJ's finding of not disabled.  (Def.'s Mem. at 13.)  This dispute centers around the proper interpretation of the phrase "significant range of semi-skilled or skilled

work" as used in Section 202.00(c).  Plaintiff argues that this section requires a significant range of semi-skilled, light occupations, which must be more than three occupations.  The Commissioner contends it merely requires a significant number of jobs in the national economy.  For the reasons discussed below, the Court finds that the existence of significant semi-skilled, light occupations to which Plaintiff's skills would be readily transferable satisfy the requirements of Section 202.00(c).  Therefore, the ALJ did not err in finding Plaintiff not disabled based on the three occupations identified by the VE.

As the parties acknowledge, the Fourth Circuit has not ruled on the specific issue of what constitutes a "significant range of semi-skilled or skilled work" as used under Section 202.00(c) of 20 C.F.R. Part 404, Subpart P, Appendix 2.  (Pl.'s Mem. at 10; Def.'s Mem. at 13.)  The few circuit courts that have addressed this issue have split on its interpretation.

Plaintiff urges the Court to follow decisions from the Ninth Circuit, which have found one or two occupations insufficient to constitute a "significant range of work" as required under Section 202.00(c).  *Maxwell v. Saul*, 971 F.3d 1128, 1131 (9th Cir. 2020); *Lounsburry v. Barnhart*, 468 F.3d 1111, 1117 (9th Cir. 2006), *as amended* (Nov. 7, 2006).  The Ninth Circuit "reasoned, in part, that because Social Security Ruling 83-10 'defines the phrase, Range of Work, as: All or substantially all *occupations* existing at an exertional level,' a sole occupation could not possibly constitute a 'range.'"  *Maxwell*, 971 F.3d at 1131 (quoting *Lounsburry*, 468 F.3d at 1117) (emphasis in original).  Moreover, the court noted that "[a] 'range' necessarily requires more than one occupation," and that "a 'significant range' must require more than two."  *Id.*  According to the Ninth Circuit, "to interpret 'significant range' to mean only 'range' would nullify the concept of 'significant.'"  *Id.* (citing *Lounsburry*, 468 F.3d at 1117).  While the Ninth Circuit "decline[d] to adopt a bright-line rule for the number of occupations required to constitute a 'significant

range,'" it held "that two occupations are insufficient and that 'a significant number of occupations' are required." *Id.* (citing *Lounsburry*, 468 F.3d at 1117).

The Sixth Circuit found otherwise in an unpublished decision.  In *Geiger v. Apfel*, the Sixth Circuit considered the claimant's argument that his "ability to work as a dispatcher is insufficient to establish that his skills are transferrable to a 'significant range' of work" as set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, § 202.00(c).  No. 99-5590, 2000 WL 1257184, at *2 (6th Cir. 2000).  The Sixth Circuit found that the VE's "testimony established that [the claimant's] skills were transferable to any dispatcher-type position and that 75,000 such jobs existed nationwide." *Id.*  The Sixth Circuit found one occupation alone sufficient to constitute a "significant range" of work and to satisfy the Commissioner's burden in showing the claimant could perform other work existing in significant numbers in the national economy as required by the Act.  *Id.*  As explained by a district court in the Sixth Circuit:

> Absolutely nothing . . . supports the plaintiff's argument that the Commissioner cannot satisfy her burden at Step 5 of the sequential analysis unless the VE's testimony identifies a significant number of "occupations," rather than a significant number of jobs. . . .  *Lounsburry* has never been cited in any decision of the United States Court of Appeals for the Sixth Circuit.  The law in the Sixth Circuit is that a VE's testimony must provide evidence of a significant number of jobs, not occupations.

*Baumbach v. Comm'r of Soc. Sec.*, No. 1:13-cv-851, 2015 WL 139714, at *9 (W.D. Mich. Jan. 12, 2015).

"[S]everal district courts have [also] considered the matter, with differing results."  *Teresa C. v. Saul*, No. 3:19-cv-462, 2020 WL 5228161, at *10 n.11 (E.D. Va. Aug. 17, 2020).  Some follow the Ninth Circuit's reasoning.  For example, in *Collis v. Colvin*, the court found that the ALJ did not meet her burden to prove a significant range of occupations where the VE identified only one job to which the claimant's skill would transfer.  204 F. Supp. 3d 1046, 1056 (S.D. Iowa

21

2016).  Similarly, in *King v. Kijakazi*, the district court found that the ability to readily transfer skills to one occupation did not satisfy Section 202.00(c)'s "significant range" requirement.  No. 22-cv-165, 2023 WL 110751, at *3-4 (W.D. Wis. Jan 5, 2023).  That court, however, declined to decide "whether two occupations could constitute a 'significant range.'"  *Id.* at *4.  As a final example, in *Blackmon v. Astrue*, the court reversed and remanded an ALJ's decision, finding that a single occupation identified by the VE could not represent a significant range of work.  No. 11-1509, 2012 WL 3253157, at *4-5 (W.D. La. July 11, 2012), *report and recommendation adopted*, 2012 WL 3253155 (W.D. La. Aug. 7, 2012).  But in doing so, the *Blackmon* court noted that a significant range of other work could include "at least several other identified occupations."  *Id.* at *5.

Other district courts have declined to follow the Ninth Circuit's reasoning.  For example, in *Hobbs v. Berryhill*, the court found that the ALJ did not err in determining that two occupations identified by the VE constituted a significant range.  No. 17-619, 2018 WL 3999582, at *12 (D. Minn. Aug. 21, 2018).  As another example, in *Hamilton v. Kijakazi*, the district court rejected the argument that "a significant range of work for purposes of [Section] 202.00(c) means a significant number of distinct occupations, rather than just a significant number of jobs . . . ."  No. 22-10066, 2023 WL 2733389, at *3 (E.D. Mich. Mar. 31, 2023).  It instead found that "the availability of 64,000 positions derived from two occupations constitutes a significant range of work and is adequate to support the ALJ's finding of non-disability."  *Id.* at *2 (internal citations omitted).  This Court too declines to follow the Ninth Circuit's reasoning in *Lounsburry* and *Maxwell*, which are not binding decisions on this Court.

The Court is not persuaded that Section 202.00(c) requires a significant range of distinct occupations as opposed to a significant number of jobs within identified occupations.  While both

the *Maxwell* decision and Plaintiff contend that "Social Security Ruling 83-10 'defines the phrase, Range of Work, as: All or substantially all *occupations* existing at an exertional level,'" *Maxwell*, 971 F.3d at 1131 (emphasis in original); (Pl.'s Mem. at 12), a review of SSR 83-10 shows otherwise.[4]  It defines "*Full* Range of Work" as "*All or substantially all* occupations existing at an exertional level."  SSR 83-10, at *6 (emphasis added).  Section 202.00(c) speaks in terms of a "significant range," not a full range of work.  SSR 83-10 also defines "Range of Work" as "Occupations existing at an exertional level."  SSR 83-10, at *7.  Importantly, "Range of Work" is not defined as a "number of occupations" or a "range of occupations" existing at an exertional level but simply occupations at an exertional level.

Properly inputting the definition of "Range of Work" into Section 202.00(c), the subsection is better understood to require that skills be readily transferable to *significant occupations* involving semi-skilled or skilled work and existing at an exertional level, rather than a significant range of occupations as found by the Ninth Circuit.  The "significant" modifier requires meaningful or important occupations, rather than imposing a specific numerical requirement.  *See* Significant, Black's Law Dictionary (11th ed. 2019) (defining "significant" as: "1. Embodying or bearing some meaning; having or expressing a sense.  2. Standing as a subtle sign of something; expressive of some hidden or obscure meaning.  3. Of special importance; momentous, as distinguished from insignificant.").  Thus, a significant range of work can be established through the existence of meaningful occupations having a significant number of jobs in the national economy.

---

[4] SSR 83-10 contains definitions for certain terms and related concepts as used in Appendix 2.  It bases the definitions on "the regulations, the vocational reference material noted in section 200.00(b) of Appendix 2, and the adjudicative experience of the Social Security Administration."  SSR 83-10, at *4.

As the Magistrate Judge noted in *Hamilton v. Commissioner of Social Security*, "it is unclear why a finding (for example) that a total of 20,000 jobs divided among three occupations would . . . yield a better result than the present case, where a total of 64,000 jobs were divided among two occupations. . . .  [T]he availability of 64,000 positions derived from two occupations, by any account, represents greater jobs opportunities than 20,000."  No. 2:22-cv-10066, 2022 WL 19518454, at *9 (E.D. Mich. Oct. 6, 2022), *report and recommendation adopted*, 2023 WL 2733389 (E.D. Mich. Mar. 31, 2023).  The Court agrees.  Contrary to Plaintiff's assertion that a significant *range* of occupations is required, SSR 83-10's definitions require only significant occupations.

In addition, unlike in *Lounsburry* and *Maxwell*, this case involves three identified occupations: building guard (about 30,000 jobs nationally), jailer (about 98,000 jobs nationally), and patrol conductor (about 50,000 jobs nationally).  On this record, the Court finds these constitute significant occupations under Section 202.00(c).  Indeed, this Court has previously found that two occupations with a significant number of jobs in the national economy sufficient. *Arthur v. Saul*, No. 2:19-cv-186, 2020 WL 5701885, at *6 (E.D. Va. Sept. 24, 2020) (citing 20 C.F.R. § 404.1566, which defines a "significant number of jobs" as "in one or more occupations")[5]; *see also Valentine v. Colvin*, No. 13-2026-GMS, 2015 WL 9855463, at *4 (D. Del. Jan. 19, 2015)

---

[5] Plaintiff argues that *Arthur* does not directly address the issue before this Court because "[n]either the U.S. Magistrate Judge's Report and Recommendation, nor the District Court's order which adopted it, cited Social Security Ruling ("SSR") 83-10 or 20 C.F.R. Part 404, Subpart P, App. 2, § 202.00(c)."  (Plaintiff's Reply Brief at 6 (ECF No. 19) ("Pl.'s Reply").)  The *Arthur* decision, however, specifically decided the plaintiff's "argument that the identification of 'two occupations is not a significant range.'"  2020 WL 5701885, at *6.  In rejecting the Plaintiff's argument, the Court found that a significant number of jobs in one or more occupations constituted a significant range. *Id.*

(noting that *Lounsburry* would be inapplicable where the ALJ identified three occupations, not just one).

Here, the ALJ complied with applicable legal standards by asking the VE whether Plaintiff had acquired skills from past relevant work that were readily transferable with little, if any, vocational adjustment to any semi-skilled or skilled work. (R. at 63-65.) The VE identified three semi-skilled occupations within the light exertional level to which the acquired skills would transfer with little, if any, vocational adjustment: building guard (about 30,000 jobs nationally), jailer (about 98,000 jobs nationally), and patrol conductor (about 50,000 jobs nationally). (R. at 64-65.) After acknowledging the requirements of the Medical-Vocational Guidelines in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ adopted the VE's testimony, finding that Plaintiff "was capable of making a successful adjustment to other work that existed in significant numbers in the national economy," including the three occupations identified by the VE. (R. at 27.) Therefore, the Court finds that the ALJ applied correct legal standards in conducting the transferability analysis and that substantial evidence supports the ALJ's determinations at step five.

## V.    CONCLUSION

For the reasons set forth above, the Court RECOMMENDS that Plaintiff's Motion for Summary Judgment (ECF No. 16) be DENIED, Defendant's Motion for Summary Judgment (ECF No. 18) be GRANTED, and that the final decision of the Commissioner be AFFIRMED.

Let the clerk forward a copy of this Report and Recommendation to the Honorable United States District Judge Roderick C. Young and to all counsel of record.

### NOTICE TO PARTIES

**Failure to file written objections to the proposed findings, conclusions and recommendations of the Magistrate Judge contained in the foregoing report within fourteen**

**(14) days after being served with a copy of this report may result in the waiver of any right to a *de novo* review of the determinations contained in the report and such failure shall bar you from attacking on appeal the findings and conclusions accepted and adopted by the District Judge except upon grounds of plain error.**

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: January 26, 2024